**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MOHSEN H. AHMAD,**

    **Plaintiff,**

-vs-                 **Case No.  6:04-cv-443-Orl-KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

## ORDER

This matter came before the Court for consideration without oral argument on the complaint filed by Mohsen H. Ahmad seeking review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for social security disability benefits. Doc. No. 1. The Commissioner answered the complaint and filed a certified copy of the transcript of the proceedings before the Social Security Administration ("SSA"). Doc. No. 4. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Middle District of Florida Local Rule 6.05 for adjudication. Doc. Nos. 13, 14.

**I. PROCEDURAL BACKGROUND.**

On June 19, 2001, Ahmad applied for disability benefits under the Supplemental Security Income for Aged, Blind, and Disabled program ("SSI"), 42 U.S.C. § 1381 *et seq.*, alleging a disability onset date of May 1, 2001. TR. 37-39. The SSA denied Ahmad's application both

initially and on reconsideration. TR. 23-24, 26-28. Then, Ahmad made a timely request for a hearing. TR. 29.

An Administrative Law Judge ("ALJ") held a hearing on July 3, 2003. TR. 176. Ahmad, who was accompanied by his attorney, testified at the hearing. TR. 176-95.

The ALJ found that Ahmad had not engaged in substantial gainful activity since May 1, 2001, the alleged onset date of his disability. TR. 16. The ALJ concluded that the medical evidence showed Ahmad had a herniated disc at L4-5,[1] degenerative changes of the lumbar spine, monoclonal gammopathies of undetermined significance (possible multiple myeloma),[2] and diabetes mellitus. TR. 13. He found that Ahmad's combination of impairments was "severe" under the applicable SSA regulations, but that the impairments did not meet or equal impairments listed in the SSA regulations. TR. 13.

The ALJ found that Ahmad had the residual functional capacity to do the following: (1) lift up to 20 pounds, (2) stand and walk for six hours in an eight-hour day; and (3) sit for six hours in an eight-hour day. TR. 15. In reaching this conclusion, the ALJ found further that Ahmad's claims of disabling pain were inconsistent with and disproportionate to the medical evidence in the record. TR. 15. The ALJ stated:

> In determining the weight to give the claimant's testimony, the undersigned finds little evidence to support the level of pain and degree of limitations which he has described. He certainly does need to follow up on the possibility of multiple myeloma. However, this diagnosis has not been confirmed with medical work-up.

---

[1] The term herniated disc refers to a rupturing of the tissue that separates the vertebral bones of the spinal column. MEDICINENET.COM, at http://www.medterms.com/script/main/art.asp?articlekey=10661 (last visited Aug. 29, 2005).

[2] A monoclonal gammopathy is a disturbance in the functioning of the body's immune system due to the proliferation of a single clone of lymphoid or plasma cells (*i.e.*, cancer). STEDMAN'S MEDICAL DICTIONARY 701 (26th ed. 1995) (hereinafter "Stedman's"). Myeloma is a plasma cell tumor. *Id.* at 1165.

> An extensive work-up was done in May 2001, and the monoclonal gammopathies were found to be of undetermined significance. The claimant has informed treating sources that his back pain is controlled with Celebrex. He has sporadically sought treatment. On examination there are no motor or sensory deficits noted. There is reduced range of motion in the thoracolumbar spine. Muscle strength and grip strength have been normal. Consequently, due to the lack of supportive evidence, the undersigned can give only limited weight to the claimant's overall testimony.

TR. 15.

The ALJ found that Ahmad could not return to his past relevant work. TR. 17. Using the Medical-Vocational Guidelines (the "grids"), 20 C.F.R. Pt. 404, Subpt P, App. 2, the ALJ concluded that Ahmad could perform a full range of light work and, therefore, that he was not disabled. TR. 16.

Ahmad requested review of the ALJ's decision. TR. 7. On January 28, 2004, the Appeals Council found no basis for changing the ALJ's decision. TR. 4-6. Ahmad timely sought review of this decision by the United States District Court on March 31, 2004. Doc. No. 1.

**II.     JURISDICTION.**

The Commissioner issued a final decision after a hearing with respect to Ahmad's application for disability benefits under SSI. Therefore, the Court has jurisdiction of this matter under 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

**III.    STATEMENT OF FACTS.**

A.     *Ahmad's Testimony.*

Ahmad was born on February 8, 1950. TR. 179. He attended school in Lebanon, and estimated that his educational attainment was equivalent to finishing high school in the United States. TR. 179. He has lived in the United States since 1975. TR. 179.

The last job Ahmad had was running his own restaurant, which he did for five years, and which ended approximately four years before his hearing. TR. 180. In his job managing the 130-seat restaurant, he was "owner, the chef, and everything, management." TR. 180. Before holding this position, Ahmad worked as a chef and manager of a restaurant in California from the mid-1970's to 1995. TR. 181-82.

Around the time he stopped running his restaurant, Ahmad's back hurt, his legs were numb, and his physician diagnosed him with cancer. TR. 180. If Ahmad worked for five or ten minutes, he would have to stop because his back hurt so badly and his legs became numb. TR. 181. He also had "sharp" pain in his head and neck, which pain radiates from his back and both legs. TR. 182. Ahmad could not walk without a "belt," which was a back support device his doctor gave him. TR. 182. He described his constant neck pain as a seven on a scale of one to ten. TR. 183.

Ahmad's back pain was constantly present, and to treat it he would take what he described as a "relaxing pill," which provided relief for a few hours. TR. 184. He wrote in a disability report that medication made him tired and sleepy. TR. 66. He described his back pain as "[f]eeling like electric shock coming up" from his waist to his back and into his legs. TR. 185. Ahmad also experienced leg cramps in his calves. TR. 186.

Ahmad could sit in one position for a maximum of ten minutes. TR. 187. After that, he would need a one-minute break of standing in order to return to a sitting position. TR. 187. Conversely, he could not stand for more than ten minutes before needing to sit or walk. TR. 188. He cited a gallon of milk as representative of the amount of weight he could lift. TR. 188. He

could carry a gallon of milk from the store to his car. TR. 189. Ahmad could bend forward at the waist, but could not twist at the hips or stoop. TR. 189-90. Ahmad had no trouble gripping items to pick them up, provided they were not too heavy. TR. 192. However, one of his hands was numb from time to time. TR. 192.

Ahmad's roommate and his roommate's girlfriend prepare his food and clean his home. TR. 192. He could no longer stand long enough to cook. TR. 192-93. Ahmad's activities include watching television. TR. 193. He used to go fishing, but he could not anymore because the spot where he would fish was a forty-five minute drive from his house, which was too far for him to drive. TR. 193. The location of the hearing was a forty-five minute drive from Ahmad's house. TR. 194. In order to drive to his hearing he had to "drive [a] little bit and stop, drive a little bit and stop." TR. 194. It took him approximately two hours to drive to his hearing. TR. 194.

B.  *Medical Evidence.*

On May 27, 1998, pathologist Robert L. Randell, M.D., interpreted a number of tests run to determine whether Ahmad had cancer. TR. 90-91. Dr. Randell diagnosed atypical plasma cells in the peripheral blood and bone marrow. TR. 90.

On June 4, 1998, Jonathan S. Dorn, M.D., interpreted the results of x-rays of Ahmad. TR. 87-89. Dr. Dorn's impressions included minimal anterior spurring of the dorsal spine, osteopenia,[3] and otherwise normal bone structures. TR. 87-89. A later interpretation of x-rays by Dr. Dorn revealed disc space narrowing at L4-5 and body structures which appeared to be osteopenic. TR. 100.

---

[3] Osteopenia is a "[d]ecreased calcification or density of [a] bone." Stedman's at 1270.

On November 9, 1998, Omar R. Kayaleh, M.D., reported the results of a physical examination of Ahmad. TR. 94-96. Dr. Kayaleh indicated that the exam was unremarkable except for some mild sciatic-like[4] pain that Ahmad could effectively treat with Tylenol and the atypical plasma cells identified by Dr. Randell. TR. 94-95. Dr. Kayaleh recommended further testing to rule out myeloma. TR. 95-96.

A prescription form completed by Dr. Kayaleh on May 29, 2001, stated that Ahmad had multiple myeloma for which he would require urgent medical attention. TR. 112.

On May 29, 2001, Ahman was admitted to the hospital with complaints of leg numbness bilaterally, difficulty walking, dry mouth and dizziness, all of which had lasted for two weeks. TR. 116, 121. He also described pain in his legs radiating down from his lower back, which pain increased with movement and bending. TR. 116. The medical history reflected questionable myeloma based on a bone marrow biopsy in May 1998 that revealed a monoclonal gammopathy. TR. 116. Ahmad underwent MRIs of his legs and lumbar spine, a bone survey, and a CT brain scan. TR. 114. The MRIs revealed a herniated nucleus pulposus (herniated disc) in the right L4-L5, moderate spinal stenosis,[5] nerve root impingement right L5 root, shallow central herniated nucleus pulposus L5-S1, disc dehydration at L4-L5 and L5-S1, and degenerative disc disease at L4-5. TR. 114, 129, 131. Krishan Nagda, M.D., noted that it was still unclear whether Ahmad

---

[4] Sciatic pain is pain related to the hip. Stedman's at 1580.

[5] Stenosis refers to the stricture of a canal, in this case, the spinal cord. Stedman's at 1673.

had myeloma and prescribed Lortab,[6] Motrin,[7] baclofen,[8] and physical therapy for his radiculopathy.[9] TR. 114. Neurology suggested that Ahmad be evaluated for epidural injections, but Ahmad felt that his pain was controlled with his current medication. TR. 114.

In July 2001, Ahmad sought emergency room treatment for bilateral leg pain, among other things. TR. 133. He reported that his pain medication was causing some drowsiness. TR. 135.

On October 3, 2001, Nitin Haté, M.D., examined Ahmad at the request of the Florida Office of Disability Determinations. TR. 141-43. Upon examination, Dr. Haté observed that Ahmad had reduced range of motion in the thoracolumbar spine. He walked with an antalgic gait, and he was unable to walk toe and heel. Tr. 141-42. Deep tendon reflexes in both ankles were absent. TR. 142. Dr. Haté's impressions were multiple myeloma affecting bone marrow causing multiple bone pains and degenerative disc disease of the lumbar spine. TR. 143. Dr. Haté opined that Ahmad would "have difficulty in any strenuous physical activities including prolonged walking, climbing stairs, and any stooping or squatting. He needs urgent medical care, possibly oncology consult and follow-up." TR. 143.

---

[6] Lortab is a pain reliever that consists of a mixture of hydrocodone, a poppy-based narcotic, and acetaminophen. DRUGS.COM *at* http://www.drugs.com/lortab.html (last visited Aug. 29, 2005) (hereinafter "Drugs.com"). It is used to treat severe pain.

[7] Motrin is a pain relief medication containing ibuprofen. Drugs.com *at* http://www.drugs.com/PDR/Motrin_Migraine_Pain_Caplets.html (last visited Aug. 29, 2005).

[8] Baclofen is a muscle-relaxing drug. Drugs.com *at* http://www.drugs.com/baclofen.html (last visited Aug. 29, 2005).

[9] Radiculopathy refers to a disorder of the spinal nerve roots. Stedman's at 1484.

On March 14, 2002, Marc R. Gerber, M.D., examined Ahmad, who complained of increasing pain in his back and right and left leg, and observed that he walked slowly but without any assistive device. His range of motion was moderately limited, with discomfort when twisting to the left or the right. TR. 154-55. A straight leg raising test[10] was positive in both legs. TR. 154. When sitting, Ahmad's reflexes were diminished to absent in both knees and ankles. He had tenderness on palpation of the lumbosacral region. TR. 154. Dr. Gerber's impressions were low back and leg pain, disc herniation at L4-5 with degenerative changes at L5-S1, which was consistent with right-sided disc herniation observed earlier by other physicians. Dr. Gerber recommended a course of anti-inflammatory medications and epidural injections. TR. 154. Dr. Gerber prescribed Celebrex for Ahmad. TR. 154. The record contains authorizations for the epidural injections. TR. 156-58.

Michael Ham-Ying, M.D., treated Ahmad for pain between January 2002 and June 2003. TR. 159, 163-64, 166, 173-75. Dr. Ham-Ying's assessments were diabetes mellitus, chronic back pain and a herniated disc, elevated blood glucose, and radiculopathy related to the herniated disc. TR. 159-61, 164. Dr. Ham-Ying's notes reflect that Ahmad had had injections to address his pain. TR. 160. He prescribed Celebrex, Vioxx, Darvocet,[11] additional tests, and other treatment for Ahmad, the notes of which are not legible. TR. 159, 164, 166. Dr. Ham-Ying's notes from July

---

[10] "'The simple straight-leg raising test [SLR] is performed with the patient lying supine, with the backs of the knees flat on the examining table. The knee is held straight, and the foot of one leg is raised while the hip is slowly flexed. Flexion of the leg through a range of 60 to 90 degrees is considered to be normal. The test is positive when pain is reproduced down the posterior thigh below the knee between the angle of 30 to 70 degrees.'" *Menezes v. Apfel*, No. CIV. 99-168-B., 2000 WL 1499491, at *1 n. 7 (D.N.H. May 4, 2000) (quoting ATTORNEYS' TEXTBOOK OF MEDICINE ¶ 15.34(1) (3d ed.1999)).

[11] Darvocet is a narcotic analgesic combined with acetaminophen. Drugs.com at http://www.drugs.com/mtm/d/darvocet_n_100.html (last visited Aug. 29, 2005).

2002 reflect that Ahmad refused additional epidural injections. He noted that Celebrex helped the pain, but that Ahmad needed to take it twice per day (BID). TR. 159.

    C.    *Reviewing Physicians' Opinions.*

On October 12, 2001, a physician whose name is not legible completed a physical residual functional capacity ("RFC")[12] assessment based on a review of Ahmad's medical records. TR. 104-11. This physician opined that Ahmad would have the following exertional limitations: (1) occasionally lift no more than twenty pounds; (2) frequently lift no more than ten pounds; (3) stand or walk for no more than six hours in an eight-hour workday; (4) sit for no more than six hours in an eight-hour workday; and (5) engage in unlimited pushing and pulling. TR. 105. The physician further opined that Ahmad would occasionally be limited in climbing, balancing, stooping, kneeling, crouching, and crawling. TR. 106. The physician provided no explanation for the opinions expressed in the form.

On February 12, 2002, M. de la Cerna, M.D., completed a physical RFC assessment of Ahmad. TR. 146-53. Dr. de la Cerna's opinion regarding Ahmad's exertional limitations was the same as that of the physician who completed the October 12, 2001, RFC assessment. TR. 147. Unlike that physician, however, Dr. de la Cerna opined that Ahmad would have no postural limitations (*i.e.*, limitations regarding climbing, balancing, etc.). TR. 148. Other than notes

---

[12] Residual functional capacity ("RFC") "is what an individual can still do despite his or her limitations." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34474-01 (1996). It takes into account "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id*. RFC assesses the individual's ability "to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. RFC does not represent "the least an individual can do despite his or her limitations or restrictions, but the most." *Id*.

regarding the medical evidence, the only support for the conclusions Dr. de la Cerna reached are the following, cryptic, handwritten notes: "Consistent & credible. Bone Survey did not show bony lesions. Pain is controlled." TR. 151.

## IV.    STANDARD OF REVIEW.

To be entitled to Social Security disability benefits under SSI and OASDI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C). The Act provides further that a claimant is not disabled if he or she is capable of performing his previous work. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). In a case seeking disability benefits under SSI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits. 42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations omitted).

The court "'must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision.'" *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (quoting *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Id.* While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).

**V.    ANALYSIS.**

Ahmad contends that the ALJ erred by failing to utilize the testimony of a vocational expert, by concluding that Ahmad could perform a full range of light work, by improperly evaluating the nonexertional impairment of pain, and by failing to adequately support his finding that Ahmad's subjective testimony was not entirely credible. Because the issue of the ALJ's evaluation of Ahmad's pain testimony is dispositive of this case, it is the only issue I address.

Ahmad contends that the ALJ erred by improperly evaluating Ahmad's complaints of pain, which in turn led to an erroneous RFC assessment. Doc. No. 11 at 12-13. The Commissioner counters that the ALJ properly weighed all of the medical evidence and testimony to arrive at his

opinion that Ahmad's pain testimony was not entirely credible and that he did not have any nonexertional impairments. Doc. No. 12 at 9-11.

If proof of a disability is based upon subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (internal quotation marks omitted). If the Commissioner discredits the claimant's subjective testimony, "he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62.

> The appropriate legal standard for evaluating a claimant's subjective complaint of pain is for the [Commissioner] . . . to consider a claimant's subjective testimony of pain if [she] finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) [that] the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986) (citation omitted).

*Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir. 1987).

In the present case, Ahmad's complaints of pain are supported by objective medical evidence of underlying medical conditions that could reasonably be expected to give rise to the alleged pain. Specifically, radiological testing reflected that Ahmad had herniated disks, spinal stenosis, nerve root impingement, degenerative disc disease and radiculopathy. *See Golden v. Barnhart,* 347 F. Supp. 2d 1074, 1078 n. 9 (N.D. Ala. 2004) (degenerative disk disease with loss/collapse of the joint space could reasonably be expected to produce claimant's pain); *Moody v. Barnhart*, 295 F. Supp. 2d 1278, 1284 (N.D. Ala. 2003) (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)) (severe degenerative disc disease is a condition that can cause disabling

pain). The severity of the pain was confirmed by examination that revealed limitations in range of motion, positive straight-leg raising tests, diminished or absent reflexes in the knees and ankles, and an antalgic gait. Physicians who treated Ahmad found his complaints of pain credible, as supported by their treatment of him with pain medication, including narcotics such as Lortab and Darvocet, and epidural injections. *See, e.g., King v. Barnhart*, 324 F. Supp. 2d 1294, 1301 n.10 (N.D. Ala. 2004) (observing that SSA regulations recognize that a positive straight-leg raising test is a clinically appropriate test for the presence of pain and limitation of motion of the spine); *Banks v. Heckler*, 612 F. Supp. 1355, 1365(S.D. Fla. 1985) (reviewing factors considered by courts in evaluating pain, including whether the complaints were consistent over time, whether the claimant sought treatment for pain, and whether treatment for pain required the use of narcotics).

When, as here, the pain standard has been met, the ALJ has an obligation to consider all evidence about the "intensity, persistence, and functionally limiting effects of pain or other symptoms. . . ." *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62. The ALJ's conclusion regarding Ahmad's complaints of pain select only the portions of the record that support his decision to give limited weight to Ahmad's complaints, rather than considering the record as a whole.

For instance, the ALJ found that Ahmed "informed treating sources that his back pain is controlled with Celebrex." TR. 15. The medical records reflect that, in June 2001, Ahmad declined epidural injections because he felt his pain was controlled by medication – these medications were, however, Motrin and Lortab. TR. 114. Lortab is a narcotic medication used to

treat severe pain. Thereafter, the evidence reflects that Ahmad reported that his pain increased. He later told Dr. Ham-Ying Celebrex "helps," rather than controlled, the pain.

The ALJ also relied upon the finding that Ahmad only sporadically sought medical treatment. There is no dispute, however, that Ahmad financially qualified for SSI benefits, which supports his testimony that he did not have insurance to pay for doctor's visits and treatment.

The ALJ relied upon the findings that there were no motor or sensory deficits noted, and good muscle and grip strength. While this is true, the record also reflects evidence of pain through positive straight-leg raising tests, and an antalgic gait supported by evidence of diminished or absent reflexes in the knees and ankles.

Further, Dr. Haté, who examined Ahmad at the request of the SSA, concluded that Ahmad would have limitations in his ability to engage in postural activities. The ALJ did not explain why he decided not to credit Dr. Haté's conclusions regarding Ahmed's functional limitations.[13]

When, as here, the ALJ's stated reasons for discrediting the claimant's testimony about the functional limitations of pain are not supported by substantial evidence in the record, the Court must reverse the decision of the SSA. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987) (implicit in the requirement that the ALJ articulate reasons for refusing to credit a claimant's subjective pain testimony is the requirement that "such articulation of reasons by the

---

[13] I need not address the Commissioner's lengthy argument that the ALJ was entitled to credit Dr. de la Cerna's opinion instead of Dr. Haté's opinion because the ALJ did not state that he relied upon the opinion of Dr. de la Cerna to support his determination that Ahmad could perform the full range of light work. "We decline . . . to affirm simply because some rational might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (footnote omitted).

[Commissioner] be supported by substantial evidence."); *accord Foote*, 67 F.2d at 1562. Accordingly, this case is due to be reversed and remanded for further proceedings.

On remand, the SSA should properly assess Ahmad's functional limitations arising from pain and other impairments. If any nonexertional impairments are found, the best practice is to call upon a vocational expert at step five of the evaluation process, rather than relying upon the grids. The law in this circuit requires the ALJ to introduce independent evidence of the existence of jobs in the national economy that the claimant can perform. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

## VI.   CONCLUSION.

For the reasons stated above, the decision of the SSA is **REVERSED** and the case is **REMANDED** for further proceedings. It is further **ORDERED** that the Clerk of Court shall issue a judgment consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 31, 2005.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties